**F. Douglas O'LEARY, Administrator of the Estate of Mary Louise Kelly, Plaintiff-Appellant,**

**v.**

**John A. McCARTY, etc., et al., Defendants-Respondents.**

**No. 34562.**

Missouri Court of Appeals, St. Louis District, Division One.

Feb. 27, 1973.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keanye & Brown, F. Douglas O'Leary, St. Louis, for plaintiff-appellant.

Heneghan, Roberts & Godfrey, Bryan, Cave, McPheeters & McRoberts, R. H. McRoberts, Jr., Thompson, Mitchell, Douglas, Neill, Guerri & Elbert, W. David Wells, Theodore S. Martin, Martin A. Rosenberg, James J. Sauter, Joseph A. Lott, St. Louis, for defendants-respondents.

McMILLIAN, Judge.

This is an appeal by plaintiff, administrator of the estate of Mary Louise Kelly, from a judgment of the Circuit Court of St. Louis County sustaining the joint motion of defendants for summary judgment. Defendants are the administrators of the estate of Mary Louise Kelly's deceased husband, Joseph James Kelly, and various beneficiaries under the will of Joseph James Kelly. Plaintiff appealed. We affirm.

For the purpose of this appeal, we outline certain salient facts surrounding the Last Will and Testament of Joseph James Kelly; also we treat plaintiff's petition as amended as he sought. In 1964, Mary Louise Kelly and Joseph James Kelly jointly owned as tenants by the entirety the apartment building and property located at 7716–18 Maryland Avenue in the City of Clayton, Missouri. Sometime during that year Mary Louise Kelly conveyed her interest in that property to her husband through a straw party. In consideration for this transfer Joseph James Kelly allegedly executed a Will that provided benefits for the heirs of Mary Louise Kelly. This entire transaction was purportedly handled by defendant McCarty, attorney for Joseph James Kelly and Mary Louise Kelly.

On May 24, 1967, Joseph James Kelly died. On the 6th of July, 1967, Joseph James Kelly's Will was admitted into probate. In admitting that Will into probate, the Probate Court of St. Louis County in Cause No. 38439 stated that:

". . . that said Will created a Marital Trust and a Residuary Trust, with each said Trust to hold approximately one-half of the distributable Probate Estate, and said Will further provided that, as to the Marital Trust, testator's wife, Mary Louise Kelly, was to be the sole life time beneficiary with Power of Appointment of the principal on her death as she may designate or appoint 'in her Last Will and Testament executed after my (Joseph James Kelly) death making

specific reference to this Power of Appointment,' and that, if testator's said wife defaulted in her Power of Appointment, then the principal of said Marital Trust, remaining at the time of her death, shall be added to the Residuary Trust, and said Will further provided, as to the Residuary Trust, that testator's wife, Mary Louise Kelly and testator's sister, Charlotte M. Kelly, were to be the primary life time beneficiaries and that testator's brother, John J. Kelly, testator's sister-in-law, Norma V. Kelly, and John A. McCarty were to be contingent life time beneficiaries and that, upon the death of the survivor of all life time beneficiaries the then remaining principal of the Residuary Trust shall be distributed in equal shares to the Damon Runyon Cancer Fund, the Heart Fund, Multiple Sclerosis Society and the St. Jude's Hospital."

On July 26, 1967, after a hearing, Mary Louise Kelly was declared non compos mentis and John A. McCarty was appointed her Guardian. Subsequently, John McCarty resigned and John J. Kelly, brother of the deceased Joseph James Kelly was appointed Guardian.

In March of 1968, Charlotte M. Kelly and John J. Kelly, sister and brother of the deceased Joseph James Kelly, filed a Petition to Contest the Will of Joseph James Kelly. The will contest allegedly involved the claim by the brother and sister of the deceased that defendant McCarty exercised undue influence over the deceased in assisting the deceased in the preparation of his Will.

On April 17, 1968, Mary Louise Kelly died. Patrick M. Fiandaca III, the Public Administrator of St. Louis County was appointed the administrator of Mary Louise Kelly's Estate and subsequently filed the appropriate pleadings to intervene in the Will contest case. On September 16, 1970, F. Douglas O'Leary, the plaintiff in this case, replaced Patrick M. Fiandaca III, who had resigned as the administrator of the Estate of Mary Louise Kelly. Plaintiff O'Leary filed an Amended Motion for Leave to Intervene and Notice in the Will Contest. On November 12, 1970, the Circuit Court of the County of St. Louis overruled plaintiff's "Amended Motion of the Administrator of the Estate of Mary Louise Kelly to Intervene." Plaintiff O'Leary did not appeal from this order.

On February 19, 1971, the Circuit Court of the County of St. Louis found that the instrument admitted to probate on June 7, 1967, and dated March 16, 1967, was the Last Will and Testament of Joseph James Kelly.

Plaintiff contends that the trial court erred in granting summary judgment as to Count I, in that the facts alleged in Count I showed that plaintiff's decedent was wrongfully deprived of certain property in such a manner that no adequate legal remedy was available. Further, that these facts, if proven at trial, would establish a situation in which the court should declare that either a resulting or constructive trust should be imposed with respect to the proceeds of the sale of property located at 7716–18 Maryland Avenue in Clayton, Missouri.

Plaintiff alleged in paragraph 8(a) of his amended petition that, " ' . . . Mary Louise Kelly conveyed the said property to her husband, and as part of the same transaction, her husband executed a will, the exact nature of which is unknown to plaintiff, but known to defendants herein; . . . that Mary Louise Kelly was influenced to believe that the conveyance of said property would benefit her said heirs, not defendant McCarty, who was the lawyer for Mary Louise Kelly and Joseph James Kelly in connection with said conveyance and said will . . . that the execution of said will was caused or contributed to by undue influence upon Joseph James Kelly by defendant McCarty and that the execution of said latter will to the benefit of Joseph James Kelly and his heirs and defendant McCarty without ben-

efit to persons intended by Mary Louise Kelly, constituted a breach of the trust which came into existence at the time the property was conveyed by Mary Louise Kelly to her husband.'" Plaintiff contends that this paragraph establishes that either a constructive or resulting trust was created and such trust was subsequently breached.

There have been many definitions of a constructive trust recited by Missouri courts. What seems to be the most comprehensive definition of a constructive trust appears in Gwin v. Gwin, 240 Mo. App. 782, 219 S.W.2d 282 at 285:

"A constructive trust does not arise by virtue of any agreement or intention of the parties, actual or implied, but is implied by law, independently of their intention to create a trust. Suhre v. Busch, 343 Mo. 679, 123 S.W.2d 8. 'Obviously the constructive trust is not the product of the intent of the parties.' Kerber v. Rowe, supra, 348 Mo. [1125] page 1130, 156 S.W.2d [925] page 927; 3 Bogert, Trusts and Trustees, § 471. It is a device or method of the law of equity to effect restitution or to rectify a situation where a party has been wrongfully deprived of some right, title or benefit in property as a result of a fraud or violation of confidence or faith reposed in another. Fraud, actual or constructive, is the essential element of a constructive trust. Little v. Mettee, 338 Mo. 1223, 93 S.W.2d 1000; Wier v. Kansas City, 356 Mo. 882, 204 S.W.2d 268; Young v. Kansas City Life Ins. Co., 329 Mo. 130, 43 S.W.2d 1046."

Most, if not all, instances of fraud or breach of faith reposed in another, involved a fiduciary or confidential relationship between either: (1) the alleged trustee and the beneficiary, Vol. 3, Scott on Trusts, § 462.4 at p. 3420; Service Life Ins. Co. of Fort Worth v. Davis, Mo.App., 466 S.W.2d 190; or (2) the grantee and the grantor, Bogert, Trusts and Trustees, 2d Ed., § 474; Vol. 3, Scott on Trusts, § 468 at p. 3441; Swon v. Huddleston, Mo.,

282 S.W.2d 18, 55 A.L.R.2d 205; Karnopp v. Karnopp, Mo., 387 S.W.2d 527; wherein either the beneficiary or grantor is injured by a breach of the fiduciary duty or confidential relationship by the other party.

Plaintiff alleges that defendant McCarty exercised undue influence on the husband of Mary Louise Kelly that resulted in the husband executing a will to the benefit of Joseph James Kelly and his heirs and to the benefit of defendant McCarty in direct contravention of the agreement between Mary Louise Kelly and Joseph James Kelly wherein Mary Louise Kelly conveyed her interest in the property at 7716–18 Maryland Avenue to her husband. The allegations of undue influence do not involve the breach of confidential relationship or the breach of a fiduciary duty by a grantee to a grantor (Mary Louise Kelly). Here, there was only the allegation that undue influence was exercised over the grantee by a third party. This allegation does not constitute a basis on which a constructive trust may be found.

Further, plaintiff makes no allegation in his petition that Mary Louise Kelly was in anyway directly injured by the alleged exercise of undue influence by McCarty. The transfer of the property in question was purportedly made in return for the husband's execution of a will which was to provide substantial benefits for the heirs of Mary Louise Kelly. The grantor was to benefit only incidentally by the transfer of this property. Any action by the grantee in failing to execute a will pursuant to his agreement with the grantor or in altering that will after compliance with the purported terms of the transfer would not injure the grantor. The only individuals that might suffer some type of injury would be the heirs of the grantor who might conceivably be deprived of some potential benefit. However, at the time plaintiff contends the constructive trust was breached (i. e., when the grantee actually executed the will), the grantor (Mary Louise Kelly) was still alive. She had no heirs at that moment. Arguably,

even if grantee's will was executed in contravention of the conveyance agreement, no aggrieved party in fact existed for the purposes of finding a constructive trust.

The court therefore finds that (1) there was no allegation of undue influence being exerted by the grantee over the grantor and (2) there was no showing that plaintiff had been deprived or lost some title or right in the property which otherwise, and, but for such wrongful act or conduct he would have. Consequently, the elements of a constructive trust are lacking.

Plaintiff contends that if the trial court cannot find from the facts alleged in Count I of plaintiff's petition that a constructive trust should be imposed with respect to the proceeds of the sale of the apartment building, then the court should impose a resulting trust on the proceeds of the above sale. The court stated in Jacobs v. Jacobs, Mo., 272 S.W.2d 185, 188: "'A resulting trust, as distinguished from an express trust, is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and attend the transaction out of which it arises.' Little v. Mettee, 338 Mo. 1223, 93 S.W.2d 1000, 1009(8, 9)." ". . . Usually the claimed cestui must have furnished the consideration, or a fixed proportionate part, and there must be a presumed intent on the part of the legal owner to hold for such beneficiary, and the trust arises by implication from the facts and circumstances, rather than from express agreement . . ." Ellis v. Williams, Mo., 312 S.W.2d 97, 101. Intention is an essential element although the intention is not expressed by words or direct creation. Meyer v. Meyer, Mo., 285 S.W. 2d 694, 698.

Plaintiff alleges in Amended Count I to his petition that at the time of the conveyance of the property the husband executed a will which " . . . pro-

vided benefits for the heirs of Mary Louise Kelly . . ." Plaintiff continues by stating, " . . . that subsequent to said conveyance . . . Joseph James Kelly executed the will attached hereto which includes no benefits for the heirs of Mary Louise Kelly . . ." The conveyance was made in 1964 and allegedly the new will was executed by the husband subsequent to Mary Louise Kelly being declared non compos mentis which was in July of 1967. Plaintiff obviously is relying on circumstances subsequent to the acquisition of title by the grantee to support his theory that a resulting trust was created. Since a resulting trust arises, if at all, by reason of facts which exist anterior to or at the time title is acquired and does not arise by reason of subsequent occurrences, In re Title Guaranty Trust Co., Mo.App., 113 S.W.2d 1053; Wenzelburger v. Wenzelburger, Mo.App., 296 S.W.2d 163; Ellis v. Williams, Mo., 312 S.W.2d 97; Hovey v. Hovey, Mo., 379 S.W.2d 621, plaintiff's petition on its face, fails to state facts that would even remotely establish a resulting trust. We find that, based on the pleadings in this case, no genuine issue of fact exists for the purpose of avoiding a summary judgment on Count I. Summary judgment as to Count I was properly granted.

As a further grounds of appeal, plaintiff argues that the trial court erred in granting summary judgment on Counts II, III and IV of plaintiff's petition. Plaintiff alleges in Counts II and III that since Mary Louise Kelly was incompetent at all times following the execution by her husband of his will, her failure to exercise the power of appointment granted to her in paragraph 4, subsection (b) of the will did not amount to a default under the circumstances. In the alternative, plaintiff contends that the trial court should have held that the power of appointment had been exercised by Mary Louise Kelly in favor of the intended beneficiaries of her estate by the execution of her will on October 16, 1964.

As this court pointed out in Stoffel v. Mayfair-Lennox Hotels, Inc., Mo. App., 387 S.W.2d 188, which cited Cooper v. Finke, Mo., 376 S.W.2d 225, 229, "a summary judgment, as its name indicates, is an extreme and drastic remedy and great care should be exercised in utilizing the procedure. It may be rendered when, but only when, the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of a material fact and that the moving party is entitled to a judgment as a matter of law. Civil Rule 74.04(c), V.A.M.R.; Swink v. Swink, Mo., 367 S. W.2d 575; Brown v. Prudential Ins. Co. of America, Mo.App., 375 S.W.2d 623. . . ."

Our duty on appeal, as stated by this court in the recent case of Weber v. Les Petitie Academies, Inc., 490 S.W.2d 278 handed down January 9, 1973, "is to review the record in the light most favorable to the party against whom the motion was filed and sustained and to determine if a genuine issue of fact does exist. Wood v. James B. Nutter & Co., Mo., 416 S.W.2d 635, 636(1); Campbell v. Stout, Mo.App., 408 S.W.2d 585, 588(3); Gasen's Drug Stores, Inc. v. Jones Enterprises, Inc., Mo. App., 388 S.W.2d 495, 500(4); Pagan v. City of Kennett, Mo.App., 427 S.W.2d 251, 253."

The question that the court must address itself to is, did Counts II and III allege a material issue of fact that would bar the trial court from granting defendant's motion for summary judgment?

Clearly, Mary Louise Kelly did not affirmatively exercise the power of appointment granted to her under the provisions of her husband's will. The will stipulated that the power of appointment was to be exercised by Mary Louise Kelly in her Last Will and Testament, and that said Will was to be executed after the husband's death. No action was taken by Mary Louise Kelly subsequent to her husband's death that would indicate that any attempt was made to exercise the power of appointment pursuant to the provisions of her husband's will.

The record indicates a nonexercise of the power of appointment. Our Supreme Court in In re Sidebottom's Estate, Mo., 327 S.W.2d 270, 277, held that, " . . . Ordinarily equity will not relieve against the nonexecution of a mere power. 72 C. J.S. Powers § 55. According to Sugden it is 'an immutable rule, that a non-execution shall never be aided.' Sugden on Powers (1856), Vol. 2, Sec. 158 . . . ." The nonexecution of the power of appointment under the specific terms of Joseph James Kelly's will is unquestionably a default.

The fact that Mary Louise Kelly was incompetent following the execution of her husband's will does not alter the court's finding that the nonexecution of the power of appointment is a mere personal privilege. As such, the holder is the only person entitled to exercise such privilege. Since "an adjudication of incompetency [has] an effect equivalent to the death of the holder of the power." In re Buchanan's Trust, Sup., 142 N.Y.S.2d 502, 504, which cited In re Erwin's Estate, Sur., 117 N.Y.S.2d 871, 873, the power of appointment terminated upon the adjudication of Mary Louise Kelly's incompetency by the Probate Court of St. Louis County on July 26, 1967.

The court therefore finds that no genuine issue of fact exists for the purpose of reversing the trial court's granting of summary judgment on Counts II and III.

This court expresses no opinion as to the liability or non-liability of the estate of Mary Louise Kelly for Federal Estate Taxes for the property held in marital trust under the terms of Joseph James Kelly's will.

The court further finds based on the foregoing analysis that no genuine issue of material fact existed under Count IV that

would entitle plaintiff to any form of general equitable relief. The trial court was correct in granting defendants' Joint Motion for Summary Judgment on this count.

Judgment affirmed.

DOWD, C. J., and WEIER, J., concur.