CHARLES H. WIER, Individually and as Trustee for FLOYD A. HUNT and BLANCHE KING PARK, Administratrix of the Estate of JOHN S. KING, Deceased, Appellants, v. KANSAS CITY, MISSOURI, a Municipal Corporation.—No. 40009.—204 S. W. (2d) 268.

Division One, July 14, 1947.

Rehearing Denied, September 8, 1947.

*Marcy K. Brown, Jr.*, for appellants.

884

*David M. Proctor,* City Counselor, *John J. Cosgrove* and *Dorothy F. Fardon,* Assistant City Counselors, for respondent.

 VAN OSDOL, C.—Appeal from a judgment in a case in which actions instituted by plaintiff and others were consolidated for trial. Thereafter, plaintiff, individually and as trustee, filed an amended petition stating the claims of himself and of the other parties claimant whose claims were vested in him as trustee. The consolidated actions were originally instituted in the year 1940 by parties plaintiff, gas inspectors, who had been employed during the years 1927 to 1939 in the Public Works Department of defendant, municipality of Kansas City. The actions were upon claims for alleged ''illegal deductions'' from salaries of the various plaintiffs as gas in-

spectors. In the instant consolidated case the trial court rendered judgment for plaintiff; however, plaintiff has appealed and is contending the judgment rendered should have been greater in amount. The amount thus in dispute, including interest, is sufficient to vest this court with appellate jurisdiction.

■ Defendant Kansas City has admitted the alleged deductions were made. Some of the deductions were authorized by ordinance. Other deductions were made at the direction of City's manager. It is admitted by defendant City that it could not lawfully reduce the gas inspectors' salaries except by ordinance. Defendant City tendered plaintiff the amounts, and the trial court has rendered judgment for the amounts (with interest) of those deductions made otherwise than by ordinance and within the limitation period, five years (Sec. 1014 R. S. 1939, Mo. R. S. A., Sec. 1014) prior to the commencement of the original, now consolidated, actions. See Coleman v. Kansas City, 351 Mo. 254, 173 S. W. (2d) 572.

■ Gas inspectors' salaries and the salaries of other officers and employees of the Public Works Department of defendant City were provided and scheduled in Sec. 147 of Ordinance No. 52820 (Administrative Code), as amended November 29, 1926, by Ordinance No. 53794. The salaries so provided and scheduled were, in effect, reduced for a stated period by Ordinance No. 303, effective December 31, 1928. The ordinance provided the "reduction shall not apply . . . to salaries paid, or for which the City is fully reimbursed or provided specifically with funds therefor, by the Kansas City Gas Company, or by any of the privately owned Public Utility Companies operating in the City." Under Ordinance No. 3249, effective May 1, 1933, the annual salaries of gas inspectors, as scheduled in Sec. 147 as amended, were changed and revised downwardly. The Ordinance was in force and effect until the end of the City's fiscal year of 1939. Ordinances Nos. 4484 and 4699, effective respectively, February 16, 1937, and September 1, 1937, provided for the suspension of Sec. 147, as amended, for stated suspension periods during the year 1937, and reduced salaries for the periods stated. The recited purposes of the ordinances in reducing salaries were the "preservation of the peace, property, health, safety and morals of Kansas City", and to make the salaries "conform to and be within the anticipated revenue of the City for the present fiscal year."

Kansas City Gas Company has a franchise to supply gas to consumers of gas in Kansas City. By Sec. 10 of Ordinance No. 33887 (Kansas City Gas Franchise Ordinance), it is provided: "For the purpose of enforcing the provisions of this ordinance and securing the correct measurement of gas furnished under the same and proper pressure of said gas to produce the best obtainable results with the least consumption of gas, . . . the city shall have the right to provide, by ordinance, for the appointment of one or more inspectors

or measurers of gas, and to prescribe their duties by ordinance, and to pass such ordinances as may be necessary to enforce the provisions of this ordinance. The city shall pay all costs and charges of such inspection and measurements, the same to be regulated and fixed by ordinance, including the salaries of said inspectors or measurers, and the grantees shall reimburse the city for all these charges, . . . ''

By Sec. 100 of Ordinance No. 56134 (Revision of the General Ordinances of Kansas City), enacted August 20, 1928, it was provided, ''Every person, company or corporation supplying gas to the city or its inhabitants, shall on or before the tenth of each month pay to the City Treasurer such sum of money as the city may have paid for expenses and maintenance of the office of Gas Inspector, including the salaries of such Inspectors . . . ''

Now, notwithstanding the reductions of salaries by, and the deductions from gas inspectors' salaries pursuant to the reductions provided by the amending Ordinances Nos. 4484 and 4699; notwithstanding the proviso, quoted supra, of Ordinance No. 303, which proviso was not observed by defendant City; and notwithstanding pay-roll ▮▮▮ ''cuts'' required by City's manager, the defendant City admittedly has rendered monthly statements to and collected from Kansas City Gas Company for salaries of gas inspectors in full amounts, as originally provided in the schedule of gas inspectors' salaries (Sec. 147, supra, as amended), until the enactment of Ordinance No. 3249, supra, and thereafter in full amounts as provided in Ordinance No. 3249; and defendant City has retained the excess (over amounts actually paid to gas inspectors) to its own use in its general fund.

Plaintiff-appellant's theory of recovery is that of a constructive trust. It is contended by plaintiff that because of malfeasance, official misconduct, and violation of a public trust, defendant City acquired title to money paid by Gas Company and is subject to the equitable duty to pay such money over to plaintiff on the ground that defendant City would be unjustly enriched if it were permitted to retain the funds. Plaintiff-appellant in his brief outlines the main issues as follows: ''The main issues are (1) whether under the facts the City should be subjected to a constructive trust as to the funds received from the Gas Company and (2) if so, the applicability of Section 1014 R. S. Mo. 1939, the five-year statute of limitations, under the circumstances shown by the admissions and the evidence. Appellant claims that under the circumstances shown that no statute of limitations affects the individual claims or that if any does it is the ten-year statute. The City claims the case is no different from the already determined salary suits to which the five-year statute of limitations was applied. If issue (1) is decided adversely to Appellant the case will be affirmed. If, however, Appellant is sustained on his contention that the City is subject to the machinery of a trust and

that Section 1014 does not apply, it will then be necessary for the Court to determine what limitation applies or whether none applies. If plaintiff's contentions are sustained on these points it will become necessary to determine whether deductions made under ordinances Nos. 303, 4484 and 4699 amending the administrative code were legal." ·

The constructive trust "may be defined as the device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. When a court of equity finds that a defendant is the holder of a property interest which he retains by reason of unjust, unconscionable, or unlawful means, it naturally desires to take such interest from the defendant and vest it in the wronged party. . . . " Vol. 3, Bogert, Trusts and Trustees, Sec. 471, pp. 3-4; Vol. 3, Scott, Trusts, Sec. 462; Lucas v. Central Trust Co., 350 Mo. 593, 166 S. W. (2d) 1053; Kerber v. Rowe, 348 Mo. 1125, 156 S. W. (2d) 925. Similarly expressed, a constructive trust is the method or formula used by a court of equity as a means of effecting restitution or of rectifying a situation where, as the result of the violation of confidence or faith reposed in another, or fraudulent act or conduct of such other, the plaintiff, who seeks the aid of equity, has been wrongfully deprived of, or has lost some title, right, equity, interest, expectancy, or benefit, in the property which otherwise and but for such fraudulent or wrongful act or conduct, he would have had. Suhre v. Busch, 343 Mo. 679, 123 S. W. (2d) 8. See also, Restatement of the Law of Restitution, Sec. 160, p. 640 et seq. It has been said no exhaustive catalog can be made of the types of wrongful retention of property which have moved chancery to decree a constructive trust. Wherever equity finds such a wrongful holding, it will give relief, whether the type of injustice be new or old. Vol. 3, Bogert, Trusts and Trustees, Sec. 471, p. 7.

We do not and could not justify or condone the conduct of the officials of defendant City in rendering statements for and collecting from Gas Company the full amounts of the salaries as scheduled, and in retaining the money collected in excess over the moneys actually paid to gas inspectors. We are confronted, however, with the question whether such excess, although unjustly collected and retained by defendant City, should, in equity, be considered as held in trust *for* (the gas inspectors) *plaintiff*. It may here be noted that any question relating to a claim Gas Company has or may have ▅▅▅ had against defendant City is not for determination in the instant action.

Defendant City was obligated to pay its gas inspectors the salaries provided by ordinance. Coleman v. Kansas City, supra; State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S. W. (2d) 532.

Sec. 470, Art. XX, Charter of Kansas City, Missouri, provides: "The salary or compensation of officers and employees of the city shall be fixed by ordinances except as otherwise expressly provided in this charter." As we have noticed, supra, the council did fix by ordinance

the salaries of gas inspectors, and from time to time the council, by ordinance, revised and reduced the salaries. The people of Kansas City, in adopting its Charter, having directed the council to fix compensation of officers and employees of the City by ordinance, such compensation as was fixed by ordinance is the measure of recovery from City in an action by an officer or employee for compensation. Coleman v. Kansas City, supra; State ex rel. Rothrum v. Darby, supra. It was the duty of the council to revise the salaries to fit the income of the city, and the matter of when such action should be taken was for the council to decide. State ex rel. Rothrum v. Darby, supra.

Turning more directly to the question or issue (1), that is, should plaintiff be entitled to invoke the remedy of a constructive trust—defendant City's gas inspectors, being entitled to recover their salaries from defendant City, as fixed by ordinance, were not dependent for their compensation upon City's collection of moneys from Gas Company. The Ordinances providing for and fixing the amount of compensation of gas inspectors were effective in measuring the amount of the defendant City's liability for the compensation, whether or not defendant City made any collection from Gas Company; the defendant City's obligation to the inspectors was a legal obligation fixed by charter and ordinance; consequently, defendant City stood in no fiduciary relation and had no equitable or legal duty to its gas inspectors with reference to the moneys collected from Gas Company. The gas inspectors had no claim against Gas Company for the payment of their salaries whereby equity should construct a trust upon defendant City's collections from Gas Company. Gas Company's obligation was to defendant City, not to defendant City's employees. The language of Sec. 10, Ordinance No. 33887, supra, and of Sec. 100, Ordinance No. 56134, supra, necessarily recognized defendant City's obligation to pay its employees, the gas inspectors, and the Sections in no sense provided for salaries, nor did the sections fix the amount of the salaries to be paid. The Sections plainly say Gas Company "shall reimburse the City for all these charges", including the salaries of inspectors, "as the City may have paid." With these observations in mind, we are unable to see the gas inspectors have been deprived of anything because of defendant City's wrongful collections from Gas Company. The instant case is unlike the case of Wood v. City of Kansas City, 162 Mo. 303, 62 S. W. 433, cited by plaintiff, wherein an ordinance provided that the salary of a clerk (employed as a notary in the City Treasurer's office) should be payment in full for his services. The notary fees earned were paid into the general fund of the City. The plaintiff, a clerk and notary public, employee in the office of the City Treasurer, could and did recover from defendant City his notary fees earned and so paid to City. The ordinance was invalid because it was in direct conflict with the statute fixing fees notaries public should be allowed for their services. And our case is

not like the case of Brink v. Kansas City, 355 Mo. 860, 198 S. W. (2d) 710, an action for money had and received. In that case plaintiff's assignors had paid under duress the tax bills which were void because of fraud to which defendant City, through its officers, was a party. Plaintiff's assignors themselves were wronged, being deprived of moneys by defendant's fraud. The situation of the gas inspectors (plaintiff in the instant action) is not entirely unlike that of plaintiff in the case of Suhre v. Busch, supra, wherein Anheuser fraudulently represented to Steinberg that he, Anheuser, wished to buy shares of corporate stock from Steinberg for the benefit of plaintiff, Mrs. Suhre. Relying upon Anheuser's representations, Steinberg sold the shares to ▇▇▇ Anheuser; but Anheuser sold them to defendant Busch. Plaintiff, Mrs. Suhre, sought to avail herself of the equitable remedy, a constructive trust. Said the court, "Plaintiff lost nothing whatsoever, nor was she deprived of anything, by the fraud thus perpetrated upon Steinberg, nor did Anheuser or Busch thereby profit or gain at plaintiff's expense or to her loss. The fraud shown, by Steinberg's testimony, was against him, and not against plaintiff, and he alone sustained the loss or damage, if any, thereby occasioned. As we have said, whether he has a cause of action, and if so the nature thereof, is not for investigation or determination in this case. As we view the case . . . a situation is not made out to which a constructive trust in plaintiff's favor is applicable, and therefore we concur in the finding of the trial chancellor that 'there is no trust ex maleficio' in plaintiff's favor." Likewise, in the instant case we rule the situation is not made out to which a constructive trust in plaintiff's favor is applicable.

▇ Although plaintiff has stated the case should be affirmed should it be held that plaintiff is not entitled to the equitable remedy, a constructive trust; and in the event of such a ruling plaintiff apparently concedes the trial court correctly declared the five-year period of the Statute of Limitations (Sec. 1014, supra) to be applicable; nevertheless, plaintiff argues the evidence shows the gas inspectors (plaintiff) were delayed in the commencement of their actions by threats of discharge. This contention is founded upon the testimony of plaintiff Weir, whose duty had been to render statements to Gas Company. Plaintiff Weir testified of his conversation with City's manager, "Well, I asked him about making this cut that was coming in, should I make these bills (to Gas Company) and deduct the cut, and he said, 'No, you will make these bills in the regular way.' I said, 'Henry, the Gas Company is paying these bills for these salaries and if these boys are not going to get it I think it is wrong.' And he said, 'You make those bills just like I tell you. The city is getting the money and if you don't like it step out and somebody else will.' "

The trial court, as stated, declared Sec. 1014, supra, applicable and did not extend the time limited in the Section. The trial court nec-

essarily must have either given no credence to plaintiff Weir's testimony or must have considered the testimony was insufficient in showing an improper act as would prevent the commencement of an action within the meaning of Sec. 1031, R. S. 1939, Mo. R. S. A., Sec. 1031. In view of the commencement of the original, now consolidated, actions in the year 1940, the year of the decision of State ex rel. Rothrum v. Kansas City, supra, it is a reasonable inference (to which we give decisive weight, especially in view of the trial court's application of Section 1014, supra, without extending the time limited in the Section) that the actions were not commenced sooner because the gas inspectors, plaintiffs, did not know they had a claim or cause of action until the Rothrum decision. Coleman v. Kansas City, supra.

Since we have ruled upon issue (1), holding there should be no constructive trust in favor of plaintiff, it is unnecessary to determine (2) what section, if any, of the Statute of Limitations is applicable to an action seeking such relief (however, see again Kerber v. Rowe, supra); and the other contentions of plaintiff failed upon the ruling of the issue (1) adversely to plaintiff.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.