

# In the
# Missouri Court of Appeals
# Western District

MICHAEL DOUGLASS,             )
                                   )
          Respondent,        )   WD81633
                                   )
v.                             )   OPINION FILED:  March 5, 2019
                                   )
PHILLIP DOUGLASS,           )
                                   )
          Appellant.          )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Marco A. Roldan, Judge

Before Division One:  Cynthia L. Martin, Presiding Judge, Victor C. Howard, Judge and
Thomas H. Newton, Judge

Phillip Douglass ("Phillip")[1] appeals a judgment imposing a constructive trust on insurance proceeds in favor of Michael Douglass ("Michael").  Phillip argues the trial court erred in imposing the constructive trust because some of the trial court's factual findings were not supported by substantial evidence.  Finding no prejudicial error, we affirm.

---

[1]Because Phillip Douglass shares a surname with his brother, Michael, we have elected to refer to both parties by their first name throughout this Opinion.  No familiarity or disrespect is intended.

## Factual and Procedural Background[2]

In 1996, Michael bought a home located at 1208 Ward Parkway in Blue Springs ("Ward Parkway property"). Michael bought the home so his brother, Phillip, would have a place to live. In 1999, Michael encountered legal problems, and conveyed the Ward Parkway property to other family members, with the expectation that they would hold title on his behalf. In 2001, those family members conveyed the Ward Parkway property to Phillip. In 2004, Phillip sold the Ward Parkway property for $77,854.46. Michael claimed the proceeds of the sale of the Ward Parkway property were being held by Phillip for Michael's benefit.

In 2005, Michael decided to buy another home so Phillip would have a place to live. At an auction in April of 2005, Michael was the high bidder for a home located at 1003 NW B Street in Blue Springs ("NW B Street property"), for which he agreed to pay $108,000. Michael paid a $3,000 down-payment on the day of the auction. Between the date of the auction and closing, Michael amended the purchase contract to add Phillip as an additional buyer. At closing, the $77,854.46 sale proceeds from the Ward Parkway property were applied against the purchase price for the NW B Street property. In addition, $20,000 was paid from a joint account owned by Michael and Phillip. Phillip contributed the remaining balance of the purchase price. Title to the NW B Street property was conveyed to Michael and Phillip as joint tenants with rights of survivorship.

---

[2]We view the evidence in the light most favorable to the trial court's judgment. *Medical Plaza One, LLC v. Davis*, 552 S.W.3d 143, 147 n.1 (Mo. App. W.D. 2018).

Phillip lived at the NW B Street property. Phillip was responsible for maintaining homeowners' insurance for the property, and for paying real estate taxes on the property.

Unbeknownst to Michael, Phillip executed a quitclaim deed in 2012 transferring title to the NW B Street property to ASTI Corporation ("ASTI"). Phillip signed a quitclaim deed for himself and for Michael as Michael's purported power of attorney. In 2013, ASTI executed a quitclaim deed transferring title to the property back to Phillip. As a result, Michael's name was no longer on the title to the NW B Street Property.

In early August 2016, Phillip borrowed $12,887.43 from Lyle Odo ("Odo") to pay back-due real estate taxes on the NW B Street property. In exchange, Odo recorded a deed of trust against the NW B Street property. As a result of this loan, a tax sale for the property was averted. Odo later learned that homeowners' insurance premiums were due and unpaid. Odo advanced $1,642 pursuant to the terms of the deed of trust to ensure that the NW B Street property remained insured.

In 2016, Phillip executed a beneficiary deed naming his girlfriend, Jennifer Gaulter ("Gaulter") the beneficiary grantee of the NW B Street property on Phillip's death. Gaulter was living with Phillip in the home.

On November 1, 2016, Michael filed a petition seeking to quiet title in the NW B Street property or in the alternative, awarding him a first lien on the property to the extent of his interest in the property. Michael's lawsuit named Odo and Gaulter as additional defendants. Odo filed counterclaims and crossclaims asserting his right to collect the amounts loaned to Phillip, along with interest.

3

Two days before trial, a fire destroyed the home on the NW B Street property. The homeowners' insurer issued two checks in the total amount of $140,000. The first, a check in the amount of $107,271.75, was made payable to Phillip and Odo. The second, a check in the amount of $32,728.25, was made payable to the City of Blue Springs.[3] Michael secured an order requiring the check payable to Phillip and Odo to be deposited into the court registry.

Michael thereafter filed an amended petition. The amended petition again sought to quiet title in the NW B Street property, but also asserted a right to share in the homeowners' insurance proceeds issued as a result of the fire loss, and sought to partition the property.

The dispute was set for trial to the court on January 10, 2018. Prior to trial, Gaulter was dismissed as a defendant, having disclaimed any interest in the NW B Street property. In addition, Odo dismissed his counterclaims and crossclaims, and was dismissed as a defendant, based on a settlement wherein he was paid $22,500 from the funds held in the court registry in exchange for release of his deed of trust. As a result of this settlement, $84,771.75 remained on deposit in the court registry, and $32,728.25 remained held by the City of Blue Springs.

At trial, Phillip stipulated that the conveyance of the NW B Street Property to ASTI was void, and agreed Michael should be restored to title in the property as a joint tenant with right of survivorship. Other evidence was presented, and the case was taken under

---

[3]The City of Blue Springs had an interest in ensuring that the fire damaged home on the NW B Street property was either fully demolished or rebuilt. The City of Blue Springs agreed that the insurance proceeds deposited with it would be released upon issuance of a permit to rebuild the home.

4

advisement. On March 2, 2018, the trial court entered judgment in favor of Michael and against Phillip ("Judgment"). The Judgment imposed a constructive trust in favor of Michael in the amount of 50% of the remaining homeowners' insurance proceeds, and ordered that the homeowners' insurance proceeds on deposit in the court registry and held by the City of Blue Springs be paid in equal shares to Michael and Phillip. The trial court ordered Michael's name restored to title for the NW B Street property; declared that no other person or entity had an interest in the property; and ordered a partition sale of the property with the net proceeds of sale to be divided equally between Michael and Phillip.

Phillip timely appealed.

### Standard of Review

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "Claims that there is no substantial evidence to support the judgment or that the judgment is against the weight of evidence necessarily involve review of the trial court's factual determinations." *Winston v. Winston*, 449 S.W.3d 1, 6 (Mo. App. W.D. 2014). Under these fact-based standards of review, a reviewing court defers to the trial court's assessment of the evidence because the trial court is "in a better position not only to judge the credibility of witnesses directly but also their sincerity and character and other trial intangibles that may not be revealed by the record." *Id.* "A reviewing court will overturn

5

a trial court's judgment under these fact-based standards of review only when the court has a firm belief that the judgment is wrong." *Id.*

## Analysis

In Phillip's sole point on appeal, he argues that the trial court erred by imposing a constructive trust on the homeowners' insurance proceeds and ordering those proceeds to be split evenly with Michael because "crucial" factual findings in the Judgment "were completely unsupported by the evidence and the record,"[4] and as a result, clear, cogent, and convincing evidence did not support the imposition of a constructive trust.[5] Specifically, Phillip challenges the trial court's factual findings in paragraphs 10, 12, and 23 of the Judgment,[6] as follows:

> 10. It was not disputed that Plaintiff Michael Douglass contributed a down payment of $3,000 at the time of signing the contract to purchase the Property.
>
> 12. The parties do not dispute that Plaintiff Michael Douglass contributed and paid an additional $10,000.00, representing one-half of $20,000.00 paid from a joint business checking account with the Defendant Phillip Douglass, towards the purchase at the time of closing.

---

[4]Phillip's point relied on complains that the findings challenged were "completely unsupported by the evidence and the record," the functional equivalent to a claim that the findings were not supported by substantial evidence. "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Ivie*, 439 S.W.3d at 199. "No contrary evidence need be considered on a substantial-evidence challenge, regardless of whether the burden of proof at trial was proof by 'a preponderance of the evidence' or proof by 'clear, cogent, and convincing evidence.'" *Id*. at 200.

[5]Phillip has not challenged the Judgment's restoration of Michael to title to the NW B Street property, or the order to partition the property and divide the net proceeds of sale equally.

[6]In cases tried without a jury, Rule 78.07(b) does not require "a motion for a new trial nor a motion to amend the judgment . . . to preserve any matter for appellate review, *if the matter was previously presented to the trial court*." (Emphasis added.) Rule 78.07(c) requires a motion to amend the judgment to preserve "allegations of error relating to the form or language of the judgment." Phillip's claim that factual findings in the Judgment were erroneous insofar as they characterize evidence as "not disputed" is arguably a claim of error relating to the "form or language of the judgment." Phillip did not file a Rule 78.07(c) motion, and thus did not bring his concerns to the trial court's attention. Though his claim of error is arguably not preserved for appellate review, we elect, *ex gratia*, to review the merit of Phillips' point on appeal.

6

23.    Defendant Lyle Odo, as a lender, paid the premium to State Farm Fire and Casualty Company to keep the Dwelling insured. The policy was in the name of the Defendant alone, although at the time of the purchase of the property the policy was purchased in the name of both parties.

To prevail on appeal, Phillip must not only demonstrate that these challenged factual findings are "completely unsupported by the evidence and the record" as alleged in his point relied on, but as well that the findings, if erroneous, were essential to the imposition of a constructive trust. *See In re Estate of Gangloff*, 743 S.W.2d 498, 502 (Mo. App. E.D. 1987) (holding that a trial court's erroneous factual finding was harmless error under Rule 84.13(b) when it was not essential to the trial court's ultimate conclusion); *see* Rule 84.13(b)[7] ("No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action."). Phillip cannot sustain this burden.

Our courts have long recognized the constructive trust as a "fluid, flexible device" that may "be employed to remedy many different types of injustice." *Brown v. Brown*, 152 S.W.3d 911, 918 (relying on *Durwood v. Dubinsky*, 361 S.W.2d 779, 790 (Mo. 1962); *Musser v. Gen Realty Co.*, 313 S.W.2d 5, 9 (Mo 1958); *Wier v. Kansas City*, 204 S.W.2d 268, 270 (Mo. 1947)). "Technically, constructive trusts are not trusts at all but equitable devices employed by courts . . . 'regardless and independently of any actual or presumed intention of the parties to create a trust.'" *Id.* at 916 (quoting *Schultz v. Schultz*, 637 S.W.2d 1, 4 (Mo. banc 1982)). Constructive trusts are used by courts to "'compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs.'" *Id.*

---

[7]All rule references are to *Missouri Court Rules, Volume I -- State, 2018* in effect at the time of trial.

(quoting *Kerber v. Rowe*, 156 S.W.2d 925, 927 (Mo. 1941)). Though constructive trusts may be imposed in reliance on a finding of actual or constructive fraud, or a finding of a fiduciary or confidential relationship, the "court is not bound by an unyielding formula" in imposing a constructive trust. *Id.* at 917-18 (quoting *Durwood*, 361 S.W.2d at 790); (relying on *Estate of Bean v. Hazel,* 973 S.W.2d 290, 292 (Mo. banc 1998); and *Fix v. Fix*, 847 S.W.2d 762 (Mo. banc 1993)). Instead, "the touchstone for imposition of a constructive trust is injustice or unfairness, which may take the form or be the product of fraud (actual or constructive), abuse of a fiduciary or constructive relationship, undue influence, or unjust enrichment." *Id.* at 918. "[I]t is not necessary that the unjustly enriched party be found to have engaged in legal wrongdoing or have had wrongful or malicious intent." *Id.* Thus, "'[t]he forms and varieties of constructive trusts are practically without limit.'" *Id.* (quoting *Musser*, 313 S.W.2d at 9). "'[N]o exhaustive catalog can be made of the types of wrongful retention of property which have moved [courts] to decree a constructive trust. Wherever equity finds such a wrongful holding, it will give relief, whether the type of injustice be new or old.'" *Id.* (quoting *Wier*, 204 S.W.2d at 270).

Here, the Judgment found that the Ward Parkway property was originally purchased by Michael for Phillip's use, and that the proceeds of the sale of that property in the amount of $77,854.46 were applied to the purchase price for the NW B Street property. [FOF 4, 11] The Judgment found that Michael and Phillip provided the money necessary to purchase the NW B Street property, and that the NW B Street property was conveyed to Phillip and Michael as joint tenants with right of survivorship. [FOF 13] The Judgment found that Phillip admitted that the NW B Street property should be sold by partition, with

8

the proceeds divided between Michael and Phillip. [FOF 37] And the Judgment found that but for the fire which destroyed the home on the NW B Street property, the value of the property sold by partition would have been increased by the value of the home. [FOF 36] In addition to these express findings, we are required to consider issues as to which no specific findings were made to have been found in accordance with the result reached. Rule 73.01(c). Here, the Judgment acknowledged that Phillip disputed Michael's contention that Phillip was holding the proceeds of the sale of the Ward Parkway property for Michael's benefit. [FOF 7] The Judgment did not expressly resolve this dispute, though it noted those proceeds were applied to the purchase of the NW B Street property. In accordance with Rule 73.01(c), we assume that the trial court found that the proceeds of the sale of the Ward Parkway property should be attributed to Michael, as that would be consistent with the result reached by the Judgment.[8]

Phillip has not challenged any of these factual findings on appeal.[9] Yet, these unchallenged factual findings constitute substantial evidence supporting the imposition of a constructive trust in favor of Michael awarding him 50% of the remaining homeowners'

---

[8]Phillip did request findings of fact and conclusions of law in the time and manner required by Rule 73.01(c). However, though the request for findings of fact identified the issues as to which Phillip sought an express finding, the identified issues did not include resolution of whether Phillip was holding the proceeds of the sale of the Ward Parkway property for Michael. We thus revert to the remainder of Rule 73.01(c) to find that disputed issue was resolved in a manner that is consistent with the result reached by the Judgment.

[9]Phillip does allege in footnotes in the argument portion of his brief that the trial court's factual finding in paragraph 11, which states that the proceeds from the sale of the Ward Parkway property were applied to the purchase price for the NW B Street property, and which thus implies that those proceeds are attributable to Michael, is collaterally undermined by the erroneous findings in paragraphs 10 and 12 of the Judgment. However, Phillip's point relied on does not identify paragraph 11, or the implication reasonably drawn from paragraph 11, as challenged factual findings on appeal. Rule 84.04(e) provides that "[t]he argument [discussing a point relied on] shall be limited to those errors included in the "Points Relied On." "'We do not review arguments and issues raised in the argument under a point that are not fairly encompassed by that point.'" *Johnson v. Mo. Dep't of Corrections*, 534 S.W.3d 869, 873 (Mo. App. W.D. 2017) (quoting *Nichols v. Div. of Emp't Sec.*, 399 S.W.3d 901, 904 (Mo. App. W.D. 2013)).

9

insurance proceeds on deposit in the court registry and held by the City of Blue Springs (a total of $58,749.65 as of the time of the Judgment). The evidence supported the trial court's conclusion that it would be unjust and unfair to permit Phillip to retain all of the homeowners' insurance proceeds where the majority of the funds used to acquire the NW B Street property came from the sale of a property Michael had paid for; where the NW B Street property was jointly titled in the name of Michael and Phillip at the time it was purchased; and where Phillip admitted that the NW B Street property, which original included the home destroyed by fire, should be sold by partition with the proceeds of sale evenly divided between Phillip and Michael.

It is thus immaterial whether the factual findings in paragraphs 10, 12 and 23 of the Judgment are "completely unsupported by the evidence and the record." Though the Judgment's imposition of a constructive trust is furthered by the findings in paragraphs 10 and 12 of the Judgment, which attribute $3,000 and $10,000 of the purchase price for the NW B Street property to Michael, these findings are not essential to the Judgment's imposition of a constructive trust for the reasons explained, above. In addition, even if the trial court erroneously found in paragraph 23 of the Judgment that Michael's name was on the homeowners' policy at the time the NW B Street property was purchased, a constructive trust may be imposed on insurance proceeds following the destruction of co-owned property even though both owners are not designated as loss payees on the insurance

10

policy. *See State Automobile and Casualty Underwriters v. Johnson*, 766 S.W.2d 113, 124-25 (Mo. App. S.D. 1989).[10]

Because it is immaterial to the Judgment's imposition of a constructive trust whether the factual findings in paragraphs 10, 12, and 23 are "completely unsupported by the evidence and the record," we need not further address whether substantial evidence in the record supports the findings.

Point denied.

### Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur

---

[10]*Matlock v. Matlock*, 815 S.W.2d 110 (Mo. S.D. 1991) distinguishes *State Automobile & Casualty Underwriters v. Johnson*, 776 S.W.2d 113 (Mo. App. S.D. 1989), noting it was "based upon a determination of constructive fraud." *Matlock*, 815 S.W.2d at 116. However, *Matlock* did not hold that a constructive trust cannot be imposed on a theory of unjust enrichment. Instead, *Matlock* affirmed the trial court's decision to forego imposition of a constructive trust because no unjust enrichment was found. *Id.*